[No. 15836.    Department Two.—March 20, 1895.]

MARY J. LOVEREN, RESPONDENT, *v.* S. S. LOVEREN, APPELLANT.

106   509
f129  289

DIVORCE—COLLUSIVE AGREEMENT—PUBLIC POLICY—DISPOSITION OF COMMUNITY PROPERTY.—An agreement between the parties to an action of divorce, which provides for a certain division of the community property, and which is partly founded on the consideration that the defendant would withdraw his counter-charges against the plaintiff, and make no defense to her charge of his desertion, and that the plaintiff would withdraw all her charges against the defendant except that of desertion, is against public policy and void, and may be disregarded by the court in disposing of the community property.

ID.—SETTING ASIDE COLLUSIVE AGREEMENT.—The court has jurisdiction to dispose of the community property in the action of divorce, contrary to the provisions of such agreement, notwithstanding the agreement has not been set aside by an independent action.

ID.—REPUDIATION OF AGREEMENT.—If the court was not misled by such collusive agreement, and while it was wholly executory it was repudiated by one of the parties, and all the issues in the action were vigorously contested, the mere fact that the agreement had been entered into will not vitiate a divorce granted in the action.

APPEAL from a judgment of the Superior Court of Humboldt County and from an order refusing a new trial.

The facts are stated in the opinions of the court.

*E. W. Wilson*, for Appellant.

*Frank McGowan*, and *Chamberlin & Wheeler*, for Respondent.

McFarland, J.—This is an action for divorce brought by the wife against the husband. Judgment was rendered for plaintiff, and defendant appeals. The points made by appellant for reversal relate entirely to that part of the judgment which deals with the property of the parties; and the question to be determined is whether or not the court erred in disregarding a certain written instrument executed by the parties in which they undertook to provide for the division of their property and the custody of four children.

In the complaint the appellant is charged with extreme cruelty, desertion, habitual intemperance, and adultery. In his answer the appellant denied these charges, and, by a cross-complaint, recriminated with charges of adultery against respondent. During the pendency of the action, after issue joined, and before the trial thereof, viz., on August 13, 1892, the parties and their attorneys signed and delivered a written instrument or stipulation, by which they agreed upon the manner in which their property should be divided, the main feature of which was that the property should be appraised by three appraisers, and that appellant should pay one-third of the appraised value to respondent, and she should make conveyances to him of all her interest in the property. Afterwards respondent became dissatisfied with this instrument, and, on October 1, 1892—before any of the issues in the case had been tried—she filed a petition asking the court to set aside and disregard said instrument. This petition was based upon alleged misconduct of the appraisers. On October 13th appellant filed an answer to the petition denying its averments, and, on that day, the matter coming on to be heard, the court inquired if the instrument was founded

upon any understanding as to the divorce; whereupon respondent's counsel, in open court, fully informed the court of the circumstances under which said instrument was executed (as hereinafter mentioned), and the court continued the matter until November 12th, on which day the court, of its own motion, continued the hearing until after the trial of certain issues touching the alleged grounds for a divorce which were to be submitted to a jury.   On December 27, 1892, the trial of those issues commenced and was prosecuted continuously until January 10, 1893.   All the issues made by the pleadings as to causes for divorce were vigorously contested by both parties; and the jury found in favor of respondent upon all her said charges against appellant, and also found in her favor upon the charge of adultery made against her by appellant.   The questions as to the property rights of the parties and the custody of their children were reserved, and were afterwards, on March 24, 1894, taken up for adjudication.   Evidence as to the circumstances under which said written instrument of August 13th was executed was introduced by both parties.   From this evidence the court found that on said August 13th the attorneys for the parties executed another written instrument, which was " part of the same transaction and agreement hereinbefore set forth "—that is, part of the said instrument providing for the division of the property. In this second instrument it was stipulated that "the defendant will destroy, in the presence of the plaintiff, all letters and photographs of letters written by her, or by any person addressed to her, upon the plaintiff's executing deeds and bills of sale of property as provided for in a certain stipulation signed by said parties on this date."   The court further found that at the time of the execution of said two instruments it was agreed by and between the parties to the action, as a part consideration therefor, that they were "to entirely settle the whole cause and causes of action set forth in the complaint and cross-complaint herein; that defendant would withdraw his defense and his allegations against plaintiff;

that plaintiff would withdraw all her charges against defendant except the charge of desertion; and that defendant would make no defense and permit the charge of desertion to be proven by plaintiff unchallenged." And for these reasons the court found, as matter of law, that the said written instrument was against public policy and void, and determined the property rights of the parties and the custody of the children without considering said instrument.

We think that the evidence fully warranted the above findings of fact, and also that the said conclusion of law was correct.

As before stated, the original petition of respondent to set aside the said stipulation was based upon misconduct of the appraisers, and the suggestion of its invalidity for the other reasons was first made by the court; but, upon the hearing, counsel for respondent urged that the instrument was void as against public policy.

The instrument in question was clearly against public policy and void. (*Beard* v. *Beard*, 65 Cal. 354; 2 Bishop on Marriage and Divorce, 702, 885; Greenhood on Public Policy, 490, 491.) In *Phillips* v. *Thorp*, 10 Or. 494, the subject is fully considered and many authorities cited; and the court say, quoting from another case, that "The authorities are uniform in holding that any contract between the parties having for its object the dissolution of the marriage contract, *or facilitating that result*, such as an agreement by the defendant in a pending action for divorce to withdraw his or her opposition and to make no defense, is void as *contra bonos mores*"; and that courts "will esteem it their duty to interfere, *upon their own motion*, whenever it appears the dissolution is sought to be effected by the connivance or collusion of the parties."

Appellant contends that the court had no jurisdiction in this action to set aside the said written instrument, and that an independent action should have been brought for that purpose. But the court clearly had jurisdiction to make disposition of the community prop-

erty (Civ. Code, secs. 146, 147); and, when appellant insisted upon said instrument as providing how said property should be divided, the court necessarily had jurisdiction to consider it and to disregard it if found to be void.   Indeed, appellant asked for findings upon the subject of said instrument, thus acknowledging the jurisdiction.   Whenever a void contract is relied on, no matter what the form of the action is in which it is presented, a court will disregard it.   In *Speck* v. *Dausmann,* 7 Mo. App. 165 (quoted in Greenhood on Public Policy, 490, 491), the court say: "Such pretended agreements, if they are to have any force, must be subjected to the *examination of the divorce court,* and derive their sanction from *a decree made by the court* with a knowledge of the facts."

Appellant contends that if the agreement was void, then the whole decree of divorce should be set aside. But the court was not imposed upon.   While the pretended agreement was yet wholly executory, and before any further proceeding was taken in the case, the respondent repudiated it and disclosed all the facts to the court.   The court was thus put upon its guard, and the intended fraud was frustrated.   Appellant introduced the letters and photographs referred to in the stipulation; the pleadings were not withdrawn or changed, and all the issues were vigorously contested under the watchful eyes of the judge, who had been informed of all the facts touching the void stipulation.

Appellant objects to the allowance to respondent of a certain sum for attorneys' fees, upon the ground that it was for past services.   But the record does not show that it was for past services.   It rather shows that the allowance was made for the purpose of enabling respondent to prosecute her suit to final judgment.   The application for the allowance was made some time before the order granting it was entered.   It affirmatively appears that respondent was entirely "without property, money, means, or credit to prosecute her said action."

CVI. CAL.—33

The foregoing views are determinative of all the points made by appellant.

The judgment and order denying a new trial are affirmed.

HENSHAW, J., and TEMPLE, J., concurred.