[Civ. No. 10764.  Second Appellate District, Division One.—September 1, 1936.]

OLLIVA M. PETERS, Respondent, v. JOHN F. PETERS, Appellant.

Irvin C. Lewis, H. B. Pool and Jessie Torrance for Appellant.

Thomas W. Cochran and E. D. Yeomans for Respondent.

ROTH, J., *pro tem.*—On January 11, 1935, John F. Peters, defendant and appellant herein, filed suit for divorce against his wife Olliva M. Peters, plaintiff and respondent herein, to whom he had been married for approximately twenty-five years, alleging acts of extreme cruelty.  The divorce complaint also alleged the execution of a property settlement

between the two of them on January 4, 1935. The allegation in this respect was:

"That the plaintiff and defendant herein have heretofore entered into a written contract in relation to and settling all of their rights, duties and obligations in respect to any and all community property owned by either of them and in respect to the obligation of each of them to support the other, as well as all matters in relation to the custody of the child of said marriage."

By the terms of the property settlement approximately $8,000 of community property was divided, substantially ninety per cent to John and about ten per cent to Olliva. The prayer of the divorce complaint was: "Wherefore plaintiff prays that the bonds of matrimony now existing between plaintiff and defendant be dissolved." On February 4, 1935, a default interlocutory decree of divorce was entered in favor of John, Olliva having made no answer to the complaint and her default having been theretofore entered on January 26, 1935. The default judgment decreed that John was entitled to a divorce, and then provided: "It is further ordered, adjudged and decreed that the property settlement contract entered into between the parties hereto and received in evidence herein be and the same is hereby approved." No appeal was taken from the interlocutory decree, and it became final on April 6, 1935. Olliva was content with the default judgment in so far as it granted a divorce, but was dissatisfied with the provisions thereof which purported to adjudicate the property rights of herself and her husband. As a consequence of this situation, Olliva on June 13, 1935, as plaintiff, filed the instant action to set aside the property settlement agreement. Olliva's complaint alleged fraud and undue influence in the execution of the agreement, and, further, that there had been a reconciliation of the parties after the entry of the interlocutory decree, with intent to cancel the property settlement, and that it had actually been cancelled.

The trial court found for Olliva, plaintiff and respondent herein, and set the property settlement agreement aside. Defendant appeals from such judgment, contending that the interlocutory decree was *res judicata*, and that in the absence of a showing of extrinsic fraud sufficient to set aside the judgment in the divorce action, the property rights of the

parties were fixed by the judgment in the divorce action. Defendant also contends that the evidence does not sustain the court's finding of reconciliation.

It is specifically provided by section 580 of the Code of Civil Procedure: "The relief granted to the plaintiff, if there be no answer, cannot exceed that which he shall have demanded in his complaint . . ." In the case of *Lang* v. *Lang*, 182 Cal. 765, the court says, at page 769 [190 Pac. 181]: "And where relief is given beyond the scope of that asked for, it is a nullity, and may be attacked collaterally, or its effect avoided under the doctrine that it is not *res judicata* . . . From what we have said upon this subject it follows that the judgment in the divorce case was not conclusive upon the plaintiff herein as to her property rights growing out of her marriage relation with defendant." It has been held also that the general language of a prayer such as "for any further relief", etc., adds nothing to the prayer of the complaint when a default judgment is entered thereon. (*Staacke* v. *Bell,* 125 Cal. 309 [57 Pac. 1012] ; *Von Der Kuhlen* v. *Hegel,* 51 Cal. App. 416 [196 Pac. 913] ; *Brooks* v. *Forington,* 117 Cal. 219 [48 Pac. 1073] ; *Lang* v. *Lang,* 182 Cal. 765 [190 Pac. 181] ; *Metropolitan Life Ins. Co.* v. *Welch,* 202 Cal. 312 [260 Pac. 545].) The effect of the code section and the doctrine of the foregoing cases appears, however, to be limited by the cases of *Brown* v. *Brown,* 170 Cal. 1 [147 Pac. 1168], *Brown* v. *Brown,* 170 Cal. 8 [147 Pac. 1171], and *Stone* v. *Stone,* 58 Cal. App. 415 [208 Pac. 993]. In these cases, the court construed the effect of an interlocutory decree of divorce entered after default. The complaint in each of these cases alleged that there was no community property, and the prayer of each complaint asked only for divorce, making no reference to an adjudication of the property rights of the parties. The decree in each case was silent as to the property rights of the parties, or the absence of property, and in each case the court held that the decree was *res judicata* as to the community property in existence at the time the complaint was filed. In the case of *Brown* v. *Brown, supra,* at page 5, the court says:

"It is earnestly contended by the respondent that the final decree is of no force whatever upon the right of the plaintiff in the property of the husband. In this we think the plain-

tiff is mistaken. Where a defendant is served with a summons and complaint stating the facts upon which he is required to act, and he makes default, he is presumed to admit all the facts which are well pleaded in the complaint. The judgment which follows upon this sort of admission is, in contemplation of law, a complete adjudication of all the rights of the parties embraced in the prayer for relief and arising from the facts stated in the complaint, including the facts in his favor as well as those against him. The defendant here is presumed to have acceded to the proposition embraced in the complaint and to have consented that plaintiff should obtain the relief therein prayed for, upon the conditions and facts set forth in the complaint. The proceeding is equivalent to a statement by Brown to plaintiff that he did not object to a divorce for the cause alleged, based upon the theory that there was no community property existing at the time the action was begun. When judgment is rendered upon such a complaint and default, it becomes, in effect, a contract between the parties that the judgment shall be final with respect to everything properly embraced within the allegations of the complaint and in the prayer for relief. (1 Freeman on Judgments, sec. 330; *Hoh* v. *Hoh*, 84 Wis. 378 [54 N. W. 731].) Although the final decree is silent as to property, it nevertheless operates as an adjudication that at the time the action was begun there was no community property. (*Thompson* v. *McKay*, 41 Cal. 221, 227; *Champion* v. *Wood*, 79 Cal. 17 [12 Am. St. Rep. 126, 21 Pac. 534].) ''

Assuming for the purposes of this case only the correctness of the Brown and Stone cases on the question of *res judicata* raised by appellant, still the judgment herein of the trial court must be affirmed. ■ As initially pointed out, the trial court in the instant case found that the parties effected a reconciliation after the entry of the interlocutory decree, and pursuant thereto cohabited together. When a reconciliation followed by cohabitation is thus effected, neither party is entitled to have a final decree of divorce entered. (*McGuinness* v. *Superior Court*, 196 Cal. 222 [237 Pac. 42, 40 A. L. R. 1110]; *Tomb* v. *Tomb*, 120 Cal. App. 438 [7 Pac. (2d) 1104]; *Chiarodit* v. *Chiarodit*, 218 Cal. 147 [21 Pac. (2d) 562]; *Kronman* v. *Kronman*, 129 Cal. App. 10 [18 Pac. (2d) 712]; *Lane* v. *Superior Court*, 104 Cal. App. 340 [285 Pac. 860].) The effect of the

reconciliation is to avoid any contract made for the parties by an interlocutory decree with respect to property rights, and that such contract may be attacked collaterally has been directly held. (*Kellett* v. *Kellett*, 110 Cal. App. 691 [294 Pac. 755]; *Gregg* v. *Manufacturers Bldg. Corp.*, 134 Cal. App. 147 [25 Pac. (2d) 1014]; *Lorraine* v. *Lorraine*, 8 Cal. App. (2d) 687 [48 Pac. (2d) 48].) In the Brown case, *supra*, at page 7, the court, speaking to this point says:

''With regard to the separation agreement made by Brown and wife in 1906, which purported to release her rights in the community and to declare subsequently acquired property the separate property of the person acquiring it, and which it is claimed bars the present action of plaintiff, we need only say that the findings declare that some four months after its execution the parties agreed to become and were reconciled, and they thenceforth for several months lived and cohabited together as husband and wife, and that in pursuance of the agreement to so live they further orally agreed to and did set aside and annul said agreement. This was an executed oral agreement and it was a sufficient cancellation of the previous written agreement of separation. (Civ. Code, sec. 1698; *Pearsall* v. *Henry*, 153 Cal. 314, 325 [95 Pac. 154, 159].) Furthermore, it has been said that the reconciliation coupled with cohabitation in pursuance thereof operates to avoid the agreement for separation. (*Wells* v. *Stout*, 9 Cal. 479, 498; *Sargent* v. *Sargent*, 106 Cal. 541, 546 [39 Pac. 931].) This, however, is not necessary to decide.''

▮ Appellant attacks the finding of reconciliation on the ground that it is not supported by the evidence. In this regard the record shows that while the reconciliation did not last long (approximately ten days), the parties in good faith commenced to live together, did actually resume marital relations, intended to cancel the prior adjustment of property rights, and that appellant actually took steps to have the property rights of the parties restored to their pre-divorce status. Such evidence, in our opinion, is ample to support the finding of reconciliation.

The judgment is affirmed.

Houser, P. J., and Doran, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on September 29, 1936.