[Civ. No. 13533.   First Dist., Div. One.   Mar. 15, 1948.]

L. ANGELL, Appellant, v. CHARLES ANGELL, Respondent.

John Paul Jones for Appellant.

Augustin Donovan and Louis B. DeAvila for Respondent.

PETERS, P.J.—Plaintiff appeals from a minute order of the trial court denying her written noticed motion for a final decree of divorce, which motion was made after the expiration of more than one year from the date of the entry of the interlocutory. The facts are uncontradicted and are as follows:

On July 23, 1945, plaintiff filed a complaint for divorce against defendant on the ground ·of extreme cruelty. The action was contested by defendant. On January 8, 1946, after a trial, the court determined that plaintiff was entitled to a divorce and directed her counsel to prepare findings. Such findings were prepared, signed and filed February 5, 1946. An examination of those findings discloses that there are no children of this marriage; that the wife waived her right to her share of the community property; that she asked for and secured no alimony; that the divorce was granted because of most brutal attacks made upon the plaintiff by the defendant while in an intoxicated condition, and that these acts of cruelty had occurred over a considerable length of time.

More than one year after the entry of the interlocutory decree and on March 4, 1947, the plaintiff filed and served her motion for entry of a final decree of divorce. The motion was accompanied by an affidavit, and, at the hearing of the motion, plaintiff supported the affidavit by oral evidence. The defendant made no countershowing by affidavit or otherwise. At the conclusion of the hearing on the motion it was denied by the trial judge from the bench. From the minute order based on such denial plaintiff appeals, contending that the trial court abused its discretion in denying her motion for the entry of the final decree.

As already pointed out, the record shows that defendant had been guilty of many acts of cruelty toward plaintiff while defendant was intoxicated. The record also shows that shortly after the trial and the submission of the case, the defendant came to see the plaintiff. He told her that he had learned his lesson and that if she would take him back he would promise not to drink again. Plaintiff told defendant that she could not rely upon his promises, that he had broken them before, and that she had gone through too much with him to again take the chance of living with him. Defendant, and several relatives and friends of the parties, thereafter approached the plaintiff on several occasions and tried to induce her to become reconciled with defendant, but she was adamant in her refusal. Finally, a representative of the organization known as Alcoholics Anonymous called upon her. He told plaintiff that defendant had joined the organization and was attending classes; that the defendant was making a sincere effort to conquer the liquor habit; that Alcoholics Anonymous had effected cures in about 65 per cent of such cases, but that the chances of securing a cure would be much enhanced if defendant had a normal home life, and if she would cooperate. Under these various pressures plaintiff agreed to discuss a resumption of marital relations based upon a conditional forgiveness if defendant would have prepared a formal contract. Defendant secured the assistance of an independent attorney, not one of the attorneys then and now representing the parties, who drafted such a formal contract. That contract was signed and acknowledged on January 12, 1946. The contract recites that plaintiff has obtained an interlocutory decree (it had not yet been entered) and would be entitled to a final decree in one year; that the parties, in good faith, desire ''to make an attempt at a reconciliation,'' and provides that plaintiff will permit defendant to return and to live with her, on certain terms and conditions. Defendant agreed ''that he will not during a period of one year from the date of the making of this agreement, ingest any alcoholic drink, beverage or stimulant''; that if, during this year, he should breach this promise, he would waive all objections to plaintiff securing her final decree, and he further agreed that in such event his wife was to be free to secure such final decree as if there ''had been no reconciliation, conditional or otherwise.'' The plaintiff agreed that, if defendant abided by the agreement, at the end of the year she would cause the divorce action to be dismissed.

The record shows that the parties thereupon resumed marital relations. The defendant attended classes given by Alcoholics Anonymous and refrained from the use of intoxicants until May 25, 1946, when he again started to drink and again treated plaintiff in a most cruel and brutal fashion. Plaintiff immediately told defendant that he had breached the agreement, and moved into a separate bedroom, and ordered defendant from her house. Defendant refused to leave and since that date, on many occasions, has returned to the house drunk and quarrelsome and, on several occasions, has hit and otherwise brutally abused plaintiff. Since May 25, 1946, plaintiff has occupied a room separate from defendant.

Not one word of this evidence was contradicted. Defendant did not personally appear, although served with the notice of motion and its accompanying affidavit, at the hearing of the motion, but the attorney who had represented him during the divorce proceedings and who is one of the attorneys representing him on this appeal, was present in court on that occasion. He did not challenge any of the evidence and offered none on behalf of his client, simply ascertaining from plaintiff for the record that he had not prepared the contract.

On this evidence we are of the opinion that the plaintiff made out a case for the granting of the final decree of divorce, and that the trial court abused its discretion in refusing to grant her that decree. Section 132 of the Civil Code provides that one year after the entry of the interlocutory, the court, on motion of either party or on its own motion, "may enter the final judgment granting the divorce." Rule XXVI of the Rules of the Superior Court requires the petitioning party to support his or her application for a final decree with an affidavit setting forth, among other things, that after the interlocutory the "parties have not become reconciled" and that "said parties have not lived or cohabited together." ▆ There can be no doubt that, in cases where the petitioning party cannot aver that there has not been cohabitation during the year, the proper procedure is to proceed by motion supported by an affidavit in explanation of the cohabitation. (*Lane* v. *Superior Court*, 104 Cal.App. 340 [285 P. 860]; *Helbush* v. *Helbush*, 209 Cal. 758 [290 P. 18].) ▆ There can also be no doubt that, where, after the entry of the interlocutory the parties have cohabited, the entry of the final decree is not a mere ministerial act but becomes a judicial act in the performance of which the trial court may use its discretion. (*Lane* v. *Su-*

*perior Court, supra,* p. 345.) The Lane case discusses these principles at some length. What is said there need not be repeated here. ■ Suffice it to say that that case, the Helbush case and others (see *Chester* v. *Chester,* 76 Cal.App.2d 265 [172 P.2d 924]; *Peters* v. *Peters,* 16 Cal. App.2d 383 [60 P.2d 313]) have established the law to be as follows: If a reconciliation based on an unconditional forgiveness is effected before the entry of a final decree the trial court should deny such a decree to either party. (See many cases collected 109 A.L.R. 1005, 1007.) But mere cohabitation where a reconciliation had not in fact been effected will not prevent the trial court from granting the final decree. (*Helbush* v. *Helbush, supra.*) The real question in each case is whether the innocent party has in fact unconditionally forgiven the guilty one and resumed marital relations with that party. If so, he or she has lost the right to secure a final decree. But it must be remembered that the main purpose of requiring the one-year period to elapse between the entry of the interlocutory and final decrees is to give the parties an opportunity to think the matter over, to compose their difficulties, and to effect a reconciliation. (*Lane* v. *Superior Court, supra,* at p. 346.) The state is interested in saving the marriage, if possible. That purpose would seldom be effectual if the innocent party could not dare try to effect a reconciliation at the peril of losing the right to secure a final decree. It is in the public interest for the courts to encourage persons who have secured an interlocutory to become reconciled. There is nothing against public policy in the innocent person saying, in effect, to the guilty one ''I won't forgive you, I will try living with you again, and if during this year you demonstrate that you will not again commit the marital offense that has caused our separation, I will then forgive you, but if during this year you again commit that offense I know that it will be hopeless and I will secure my final decree.'' Such agreements, I repeat, are in accord with public policy.

■ Whether an agreement is an unconditional one of forgiveness, and therefore justifies the denial of the final decree, or is a conditional one, and therefore warrants the granting of the final decree, is a question of fact. If the evidence, or the reasonable inferences therefrom, is conflicting, the determination of the question by the trial court, in accordance with elementary principles, is conclusive on the appellate court. Thus in the Lane case, *supra,* the main case relied

upon by respondent, the appellate court went to great pains to point out that there was ample evidence to show that there was an express or implied agreement to become unconditionally reconciled. It was, therefore, held that the order of the trial court denying the final decree was within the discretionary powers of the trial court. In the Helbush case, *supra,* the evidence again was conflicting. There was evidence that, although the parties had resumed marital relations, there had not been an unconditional forgiveness. The Supreme Court, therefore, held that the action of the trial court in granting the final decree was within its discretion and could not be disturbed on appeal. But where the evidence, and the inferences therefrom, are all one way, the trial court has no discretion to refuse the relief warranted by such evidence. As was said in *O'Connell* v. *Superior Court,* 74 Cal.App. 350, 353 [240 P. 294]: "Where there is a legal right to relief under certain facts and the existence of such facts is not questioned a court having jurisdiction has no discretion to refuse the relief."

In the present case the evidence demonstrates to a certainty that there was no unconditional forgiveness of the marital offense. Quite to the contrary, the evidence demonstrates that plaintiff refused to forgive the defendant unless he refrained from drinking for a year. That was expressed in language and acts too clear to be questioned. The resumption of marital relations was based on the express agreement of the parties that the reconciliation should be conditional. There is not one word of evidence to the contrary, and defendant does not contend that there is. Defendant contents himself with the mere assertion that where parties resume marital relations whether the final decree shall be granted rests in the "discretion" of the trial court. But that does not mean at the whim or caprice of the trial court. It means a legal discretion, guided by law. When the law is clear the only discretion is to follow the law. (*Cargnani* v. *Cargnani,* 16 Cal.App. 96 [116 P. 306].) If the plaintiff did not make out a clear case entitling her to the final decree in this proceeding, there never could be a case where the denial of the final decree would amount to an abuse of discretion. That is not the law.

There being no evidence and no inference from the evidence to support the implied finding that the forgiveness here involved was unconditional, and the uncontradicted evidence showing that the forgiveness was conditional, we are of the

opinion that the action of the trial court in refusing to grant the final decree was an abuse of discretion.

The order appealed from is reversed.

Bray, J., concurred.

WARD, J.—I dissent.

The reconciliation of estranged spouses before or after an interlocutory decree is in accord with the accepted judicial policy of protecting marital status. In the majority opinion the evidence has been revalued and because no other witness appeared to contest the motion it is held: "There being no evidence and no inference from the evidence to support the implied finding that the forgiveness here involved was unconditional, and the uncontradicted evidence showing that the forgiveness was conditional, we are of the opinion that the action of the trial court in refusing to grant the final decree was an abuse of discretion."

The trial judge was justified in denying plaintiff's motion for a final decree upon either of two grounds: 1. If the trial judge disbelieved the whole or an essential part of the testimony of plaintiff, presented in support of her motion, including the agreement, then the judgment rendered against plaintiff in this case was proper. The issuance of a final decree is discretionary with the trial court. 2. The fact, *standing alone,* that the return of the spouses to marital relations is conditional, does not justify the issuance of a final decree. Whatever the conditions may be, the trial court must have the right to pass upon the propriety thereof. (9 Cal.Jur. § 116, pp. 767-768.) Instances of proper conditions are too numerous to mention (17 Am.Jur. § 116, pp. 211-212), but "A party to an action for divorce is not entitled to have a final decree entered when to do so would be a flagrant abuse of the principles of equity and of the due administration of justice" (9 Cal.Jur. § 117, p. 768).

In this case the parties entered into a written agreement that the husband would abstain from alcoholic liquor or that "he will waive all legal objection to the obtaining" of a final decree of divorce by the wife. In brief, plaintiff's position is that she would live in the same abode with the right to defendant of marital relations, but she reserved the right of forgiveness. The husband agreed in writing that if the wife decided his conduct was not all that she desired he would not oppose the

issuance of a final decree of divorce. This contract attempted to bestow upon the wife an unfair advantage if there should be a difference of opinion relative to the conduct of the husband. Such a contract would permit parties to enjoy marital relations for over 11 months and then upon the whim or caprice of one spouse obtain a final decree irrespective of the declaration of law or the views of the courts on the merits of the motion.

It is not permissible that parties by the terms of a contract may provide that if future disputable questions arise one side will be refused the right to submit the matter to a court of justice. One essential element of a contract is that it must have a lawful object. (Civ. Code, § 1550, subd. 3.) Any contract the object of which is to take away the right of the court to decide an issue over which it has jurisdiction, such as to agree that one party in a divorce proceeding will make no defense, is void. (*Loveren* v. *Loveren*, 106 Cal. 509 [39 P. 801]; *Beard* v. *Beard*, 65 Cal. 354 [4 P. 229]; *Pereira* v. *Pereira*, 156 Cal. 1 [103 P. 488, 134 Am.St.Rep. 107, 23 L.R.A. N.S. 880].) Even in contracts adjusting property rights the court may approve or disapprove. (*Hill* v. *Hill*, 23 Cal.2d 82 [142 P.2d 417]; *Hough* v. *Hough*, 26 Cal.2d 605 [160 P.2d 15].)

To epitomize: 1. The determination of the facts was a question for the trial judge. He observed and heard the plaintiff testify. I am unable to say that he abused his discretion. 2. Irrespective of the truthfulness of the testimony of plaintiff, the contract is void. Its object is unlawful, namely, to take away from the court its function to determine the propriety of the issuance of the final decree.

The judgment denying plaintiff a final decree of divorce should be affirmed.

A petition for a rehearing was denied April 14, 1948. Ward, J., voted for a rehearing.

Respondent's petition for a hearing by the Supreme Court was denied May 13, 1948. Edmonds, J., and Spence, J., voted for a hearing.